UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DARRYL GRADY, ) | CASE NO. 1:07CV3686 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Darryl Grady ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the Court DENIES Plaintiff's appeal and AFFIRMS the Commissioner's decision:

## I.  PROCEDURAL HISTORY

On June 19, 2003, Plaintiff filed an application for DIB.  Tr. at 45-47.  That same day, Plaintiff also filed an application for SSI.  *Id*. at 216-218.  The SSA denied his claims initially and on reconsideration.  *Id*. at 27-36, 219-227.

On June 22, 2005, an ALJ conducted a hearing where he received testimony from Plaintiff; Frank Cox, M.D., a medical expert; and Mark Anderson, a vocational expert.  Tr. at 228-252. Plaintiff was represented by counsel.  *Id*.  On July 21, 2005, the ALJ issued a Notice of Decision – Unfavorable, finding that Plaintiff was not disabled.  *Id*. at 11-19.

Plaintiff filed an appeal in this court, and his case was remanded for further proceeding on January 5, 2007.  Tr. at 285-286.  On August 4, 2007, the ALJ issued another  Notice of Decision

– Unfavorable, finding that Plaintiff was not disabled.  *Id*. at 257-271.

On December 1, 2007, Plaintiff filed the instant suit.  ECF Dkt. #1.  On April 15, 2008, Plaintiff filed a brief on the merits. ECF Dkt. #16.  On June 12, 2008, Defendant filed a brief on the merits.  ECF Dkt. # 19.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ found that Plaintiff suffered from two severe impairments: discoid lupus and blindness in the right eye.  Tr. at 263. The ALJ reasoned that the record contains medical source opinions all agreeing that Plaintiff is significantly limited in his ability to perform basic work related activities because of these impairments.  *Id*.

The ALJ, however, explicitly rejected Plaintiff's borderline intellectual functioning and alcohol abuse as severe impairments.  Tr. at 263.  The ALJ reasoned that, after considering four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, the impairments do not cause more than minimal limitations on Plaintiff's ability to perform basic mental work activities.  *Id*.

The ALJ first addressed activities of daily living.  Tr. at 263.  He found Plaintiff to have mild limitations because Plaintiff reported being able to clean his home and manage his own finances. *Id*.  Next, the ALJ considered social functioning and found mild limitations.  *Id*.  The ALJ reasoned that Plaintiff interacts with friends and would have no problems relating to coworkers, supervisors, and the general public.  *Id*.  Third, the ALJ considered concentration, persistence, and pace, where he found mild limitations.  *Id*.  The ALJ reasoned that a consultative examiner described Plaintiff as having "adequate" capabilities in this area.  *Id*.  Fourth, the ALJ noted that Plaintiff has experienced no episodes of decompensation.  *Id*.

The ALJ went on to address the report of consultative psychologist Joseph Koneiczny, Ph.D. Tr. at 263.  Dr. Koneiczny felt that Plaintiff became difficult when he had to wait to complete testing due to being late for his appointment.  *Id*.  Dr. Koneiczny felt that Plaintiff's efforts during the testing was questionable.  *Id*.  While Dr. Koneiczny measured a full scale IQ of 59, he felt that the score underestimated Plaintiff's actual intelligence and opined that Plaintiff likely had borderline to low-average intelligence based on his educational and vocational history.  *Id*.  The ALJ noted that

-2-

Dr. Koneiczny offered a diagnosis of borderline intellectual functioning, but found no more than mild limitations with basic work related mental activities. *Id*. Dr. Koneiczny also offered a Global Assessment of Functioning ("GAF") of 64 for symptom severity and 44 for functional severity. *Id*.

The ALJ noted that state agency reviewing psychologist Douglas Pawlarczyk, Ph.D. also offered an opinion on Plaintiff's abilities, and determined that Dr. Koneiczny's examination established borderline intelligence as a severe impairment. Tr. at 263-264. Dr. Pawlarczyk reasoned that Plaintiff was not able to carry out detailed instructions and would have moderate difficulties in maintaining concentration, persistence, and pace. *Id*. at 264. The ALJ rejected this opinion because Dr. Koneiczny said that Plaintiff's ability to concentrate and attend to tasks was adequate. *Id*. The ALJ further noted that Dr. Koneiczny wrote that Plaintiff's "ability to understand and to follow directions appears to be adequate and would appear to be greater than would be anticipated given the results of intellectual testing." *Id*.

The ALJ also noted that Dr. Ross testified and did not feel that the IQ testing was a valid indicator of Plaintiff's intellectual functioning. Tr. at 264. The ALJ stated that Dr. Ross did not find that any of Plaintiff's mental health issues would result in a severe mental impairment. *Id*. The ALJ gave Dr. Ross's opinion the greatest weight because he testified under oath and subject to cross-examination after hearing Plaintiff's testimony. *Id*.[1] The ALJ also reasoned that Dr. Ross also had access to the entire record, including evidence that Dr. Koneiczny and Dr. Pawlarczyk did not have.

Having found that Plaintiff suffered only mild limitations in the first three functional areas and no limitation in the fourth area, the ALJ found that Plaintiff's borderline intellectual functioning was not severe. Tr. at 264.

The ALJ went on to find that Plaintiff did not have an impairment or combination of impairments that meets or medically exceeds a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). Tr. at 264. The ALJ reasoned that no treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairments. *Id*.

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to

---

[1] In fact, Plaintiff did not arrive at the hearing until after Dr. Ross had testified. *See* Tr. at 505.

perform a reduced range of light work. Tr. at 264-269. The ALJ specifically found that Plaintiff can lift, carry, push, and pull 30 pounds occasionally and 20 pounds frequently. *Id*. He can sit for six hours and stand and/or walk for four hours in an eight-hour workday. *Id*. He can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. *Id*. He can frequently balance, stoop, kneel, crouch, and crawl. *Id*. He can frequently reach, handle, and feel and can occasionally perform manipulative fingering. *Id*. He cannot see with the right eye but his vision is within normal limits with the left eye. *Id*.

Based on the above RFC, the ALJ determined that Plaintiff was unable to perform his past relevant work as a plastic roll cutter and as a service station attendant. Tr. at 269. The ALJ determined, however, that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id*. at 270. The ALJ reasoned that the vocational expert testified that a hypothetical person with Plaintiff's age, education, work experience, and RFC could work as a vending attendant, housekeeping cleaner, or a fast-food worker. *Id*. Accordingly, the ALJ found that Plaintiff was not disabled. *Id*.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of

> the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.  ANALYSIS

### A.  Whether the ALJ erred in finding that Plaintiff's mental impairments were not severe

Plaintiff first contends that the ALJ erred in finding that his mental impairments were not severe in nature. ECF Dkt. #16 at 9. Plaintiff points the Court to a portion of the ALJ's decision where he addresses the four functional areas known as "paragraph B criteria." *Id*. Plaintiff then contends that "While the Plaintiff's mental impairments may not have met a listing, that does not

-5-

mean that his mental difficulties were not severe impairments." *Id*.

Plaintiff's argument is without merit because any error by the ALJ in this regard is harmless. The Sixth Circuit held in *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244, (6th Cir. 1987), that an ALJ's finding of non-severity of a condition could not constitute reversible error where the ALJ found other impairments to be severe. The *Maziarz* court reasoned that, upon determining that a claimant has one severe impairment, the regulations require the Secretary to continue with the remaining steps in his disability evaluation as outlined above. *Id*.; *see also Fisk v. Astrue*, 253 Fed.Appx. 580, 2007 WL 3325869, (6th Cir. Nov. 9 2007), unreported ("Because the ALJ considered these impairments when determining Fisk's residual functional capacity, we find it unnecessary to decide whether the ALJ erred in classifying the impairments as non-severe at step two.") (internal quotation omitted); *Boothe v. Commissioner of Social Security*, Case No. 1:06-CV-00784, 2008 WL 281621 at *10 (S.D.Ohio Jan. 31, 2008), slip op.:

> In the instant case, the ALJ determined that plaintiff suffered from severe impairments of degenerative disc disease in the lumbar spine and depression. Although the ALJ did not identify the other conditions cited by plaintiff as severe impairments, a review of the ALJ's decision indicates he did consider the limitations and restrictions imposed by plaintiff's remaining conditions in the remaining steps of the disability determination process as required under Social Security Ruling 96-8p.FN4 When he assessed plaintiff's residual functional capacity, the ALJ considered the evidence of loss of disc height, disc dessication, disc bulge and protrusion, and the annular disc tears from 2002 and 2003, as well as the later 2005 evidence from Dr. Sakalkale, showing tenderness and muscle spasm at L4-5 and L5-S1, diminished lumbar range of motion, negative straight leg raising, 5/5 strength in the lower extremities, intact sensation, and symmetrical deep tendon reflexes. (Tr. 14-15, 16). The ALJ considered this evidence, along with the December 2003 findings of consultative examiner Dr. Akaydin, in determining plaintiff's RFC. (Tr. 16-17). Because the ALJ considered these impairments when determining plaintiff's residual functional capacity, including those symptoms and limitations which plaintiff characterized as being caused by such impairments, any failure on the part of the ALJ to characterize such impairments as "severe" at step two of the sequential evaluation process does not constitute reversible error. *Maziarz*, 837 F.2d at 244. Therefore, plaintiff's first assignment of error is without merit.

Likewise, in the case at bar, the ALJ found that Plaintiff's discoid lupus and blindness in the right eye were severe. Tr. at 263. Under *Maziarz,* the analysis can end here because the ALJ was required to go on to consider Plaintiff's impairments in determining his RFC. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' "); 20 C.F.R. § 404.1545(a)(2) ("If you

have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

The Court notes, however, that the reasons for reversal are even weaker in this case than in *Maziarz*. Here, the ALJ went on to find that no impairment or combination of impairments meets or medically exceeds a Listing, and the ALJ considered Plaintiff's non-severe conditions in evaluating Plaintiff's RFC. *See* Tr. at 264 ("At the hearing Dr. Ross testified that none of the claimant's mental impairments meet or medically equal a listed impairment."); 268 (in discussing RFC, "Dr. Ross testified at the hearing and gave his opinion on the mental issues as discussed above."); 269 (in discussing RFC, "In determining this case the Appeals Council ordered me to . . . . further evaluate the claimant's mental impairments in accordance withe the Regulations, which I did in detail in Finding No. 3. . . "). Even assuming, arguendo, that the ALJ erred in finding Plaintiff's mental impairments to be non-severe, Plaintiff does not challenge the ALJ's findings regarding the Listings or his RFC. Those challenges are, therefore, waived. *See Young v. Secretary of Health & Human Services*, 925 F.2d 146, 149 (6th Cir. 1990) (a claimant may not raise a claim on appeal to the Court of Appeals that was not raised in the district court). Accordingly, the Court sees no basis for reversing the ALJ's decision.

Out of an abundance of caution, the Court will address the merits of Plaintiff's argument. Plaintiff contends that the ALJ's finding that he does not meet a Listing does not necessitate a finding that his condition is not severe. ECF Dkt. #16 at 9. As Defendant contends, however, the ALJ was merely conducting a review under a special technique provided for by the regulations. *See* 20 C.F.R. §404.1520a. In fact, the ALJ specifically cited that section of the regulations. Tr. at 264. Contrary to Plaintiff's assertion, the ALJ was not conducting a Listing analysis at Step Two; the ALJ conducted the proper technique, which the Secretary must follow "**at each level in the administrative review process**." 20 C.F.R. § 1520a(a) (emphasis added). The technique requires the ALJ to include in his written decision a specific finding as to the degree of limitation in each of four functional areas. 20 C.F.R. § 1520a(c)(4), (e)(2).

Lastly, Plaintiff challenges the ALJ's treatment of Dr. Ross's opinion. ECF Dkt. #16 at 10. Plaintiff contends that the ALJ gave great weight to Dr. Ross' opinion in support of his finding that Plaintiff's mental impairments were not severe, but Dr. Ross never testified that Plaintiff's mental impairments were not severe – Dr. Ross indicated only that he could not tell from the available information. ECF Dkt. #16 at 10. The ALJ did state that Dr. Ross "did not find that any of the mental health issues, including the borderline intelligence or alcohol abuse, would result in more than mild limitations with basic work-related activities." Tr. at 264. And Dr. Ross did opine that Plaintiff would have moderate limitation in maintaining concentration, persistence, and pace. *Id*. at 496. Despite this error, however, remand is not warranted under the rule of law articulated in *Maziarz* because the ALJ was required to and did continue to consider Plaintiff's conditions under the Listings and as they impact his RFC.

### B. Whether the ALJ erred in his treatment of Plaintiff's arthralgia and polyneuropathy

Plaintiff next contends that he was diagnosed with arthralgia and polyneuropathy, but the ALJ failed to consider these impairments in combination when assessing his overall disabilities. ECF Dkt. #16 at 11-12. Plaintiff notes that he has consistently complained of joint pain and stiffness throughout his medical treatment. *Id*. at 11. Plaintiff also notes that Dr. Ross opined that discoid lupus could cause joint pain, but offered no opinion as to the severity of the pain in Plaintiff's case. *Id*.

The Court is uncertain of the basis of Plaintiff's argument. Plaintiff has not clearly articulated its argument as a challenge to the ALJ's treatment of these conditions at Step Two, under the Listings, or under an RFC analysis. *See* ECF Dkt. #16 at 11-12. The Court surmises that Plaintiff again challenges the ALJ's findings regarding severity at Step Two because Plaintiff states that "substantial evidence demonstrates that Plaintiff has additional **severe** medically-determinable physical impairments, namely arthralgia and polyneuropathy, which were not considered by the administrative law judge." ECF Dkt. #16 at 11 (emphasis added). Plaintiff also states: "As noted above, the ALJ found severe, medically determinable impairments only as to Plaintiff's lupus and his loss of vision in his right eye. However, Plaintiff also suffers from pain in his joints, diagnosed

-8-

as 'arthralgia' by his treating physicians.  Plaintiff was further diagnosed with 'polyneuropathy' . . ."  ECF Dkt. #16 at 11.  The Court interprets Plaintiff's argument as a challenge to the ALJ's Step Two analysis based on the fact that Plaintiff speaks of "additional severe" conditions and the fact that  Plaintiff contends that he also suffers from arthralgia and polyneuropathy in addition to the only severe impairments that the ALJ found.  *See* ECF Dkt. #16 at 11.

For the reasons discussed in subsection A, above, the Court finds the ALJ's failure to find Plaintiff's arthralgia and polyneuropathy to be severe does not constitute reversible error.

The Court first notes that the diagnosis of polyneuropathy to which Plaintiff points was polyneuropathy *secondary to lupus and alcohol use*.  *See* Tr. at 182.  The ALJ discussed Plaintiff's lupus at length.  *See* Tr. at 265-269.  In fact, the ALJ acknowledged the particular diagnosis and cited the same records upon which Plaintiff relies.  *See* ECF Dkt. #16 at 11 citing Tr. at 182; Tr. at 266 citing Tr. at 181-182 ("Deepak Raheja, M.D., suspected polyneuropathy secondary to lupus and alcohol abuse.").  Accordingly, the ALJ's discussion of lupus is adequate to address the symptoms associated with polyneuropathy.

As Defendant notes, the ALJ did consider the symptoms of Plaintiff's arthralgia and polyneuropathy in combination when determining Plaintiff's RFC.  For Example, the ALJ noted that Plaintiff testified that he experiences ankle pain and could walk only for a couple of blocks before having to rest.  Tr. at 265-266.  The ALJ noted Plaintiff's testimony that he cannot sit or stand for long because of stiffness in his joints.  *Id*. at 266.  The ALJ noted that Plaintiff denied any acute swelling of his joints, displayed a full range of motion and could bend squat, and rise without difficulty on August 7, 2003.  *Id*.  The ALJ noted that Deepak Raheja, M.D. suspected polyneuropathy secondary to lupus and alcohol abuse.  *Id*.  The ALJ addressed a June 29, 2006 consultative exam by Franklin Krause, M.D., who noted chief complaints of lupus and arthralgias.  *Id*.  The ALJ addressed statements from Plaintiff's friend, Eurika Wilson, who claimed that Plaintiff had stiffness in his joints and needed help bathing and tying his shoes.  *Id*. at 267.  The ALJ found that the medical evidence did not support these claims because Social Security Representative R. Waller interviewed Plaintiff on March 29, 2006 and found that he had no difficulty with walking, sitting, standing, or writing.  *Id*.  Lastly, the ALJ specifically stated that he considered Plaintiff's

-9-

"complaints of joint and extremity pain in addressing his exertional, postural and manipulative limitations." *Id*. at 268.

Based on the foregoing review of the ALJ's decision, the Court sees no basis for Plaintiff's assertion that the ALJ failed to consider arthralgia or polyneuropathy. Accordingly, Plaintiff's second basis for appeal is dismissed.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's appeal and DISMISSES the instant case in its entirety WITH PREJUDICE.

DATE: February 5, 2009                              *s/ George J. Limbert*
                                                    GEORGE J. LIMBERT
                                                    UNITED STATES MAGISTRATE JUDGE